**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOON ASSOCIATES, INC., d/b/a | : CIVIL ACTION |
| TROCADERO THEATRE | : |
| | : |
| vs. | : NO. 05-CV-6621 |
| | : |
| HOUSE OF BLUES TOURS AND | : |
| TALENT, INC. | : |
| | : |
| vs. | : |
| | : |
| JOANNA PANG, Individually, | : |
| JOON ASSOCIATES, INC., d/b/a | : |
| TROCADERO THEATRE | : |

| | |
|---|---|
| JOON ASSOCIATES, INC., d/b/a | : CIVIL ACTION |
| TROCADERO THEATRE | : |
| | : |
| vs. | : NO. 06-1632 |
| | : |
| HOUSE OF BLUES TOURS AND | : |
| TALENT, INC., KEVIN MORROW, | : |
| MICHAEL ETZIONI, GREGORY | : |
| TROJAN, JOSEPH KACZOROWSKI | : |
| LIAM THORNTON | : |

<u>**MEMORANDUM AND ORDER**</u>

**JOYNER, J.**                                    **September 18, 2006**

     This breach of contract action is presently before the Court
on Motion of the Defendants, House of Blues Tours and Talent,
Inc. ("HOB"), Kevin Morrow, Michael Etzioni, Gregory Trojan,
Joseph Kaczorowski and Liam Thornton for Entry of a Protective
Order Regarding Confidentiality.  For the reasons which follow,
the motion is GRANTED.

## **Factual Background**

_____This case arises out of an "Exclusive Booking Agreement"
which Plaintiff Joon Associates (hereinafter the "Trocadero")
entered into with HOB on or about June 20, 2004.  Under the terms
of that agreement, the House of Blues had the exclusive rights to
locate, negotiate and book professional entertainers to perform
at the Trocadero Theatre and to assist the Trocadero in the
procurement of sponsorships and marketing in exchange for which
the Trocadero would provide the venue and all of the services
needed for operations, including providing vending, security and
maintenance services and maintaining the liquor license.  The
parties were to split the profits, losses and liabilities 50/50.
Over the Spring and into the Summer of 2005, the parties were in
negotiations over the sale of the Trocadero to HOB.  However, on
September 20, 2005, the Trocadero ceased all negotiations and,
in retaliation, HOB failed to pay more than $102,000 in service,
artist and advertising fees which it owed to the Trocadero.
Plaintiffs thereafter brought these two lawsuits against HOB and
its individual employees Morrow, Etzioni, Trojan, Kaczorowski and
Thornton for breach of contract and for declaratory judgment that
HOB has materially defaulted under the Agreement, thereby
entitling Plaintiffs to terminate the contract.[1]  In response,

---

[1]  By stipulated consent order dated June 22, 2006, the two cases were
consolidated for purposes of pre-trial discovery and trial.

HOB filed an Answer denying that it had breached the Exclusive Booking Agreement and counter-claiming against Plaintiffs for breach of contract, conversion and tortious interference with prospective contractual relations.

By way of the motion now before us, Defendants seek the entry of a protective/confidentiality order to protect what they allege is their confidential information.  Under the terms of this requested order, a distinction is made between materials designated "confidential information" and that given the designation "confidential information-outside counsel only." Defendants seek to designate the following four categories of information as ordinary "confidential information" which would grant the plaintiffs and their attorneys complete access to this information but they could not disclose it to third parties:

> 1.  The final and drafts of a Summary Term Sheet entered into between House of Blues and a Third Party, Northwest Arch LLC, which sets forth basic terms of a proposed long term lease of the Trocadero Theatre;
>
> 2.  A House of Blues-commissioned preliminary architectural evaluation regarding the suitability for and viability of the Trocadero Theatre as a House of Blues-operated entertainment venue;
>
> 3.  Drafts and proposed terms of a proposed long-term lease of the Trocadero Theatre prepared by and negotiated between counsel for House of Blues and Northwest Arch LLC; and
>
> 4.  Financial information regarding the Trocadero Theatre.

Defendants seek to designate the following information as "confidential information-outside counsel only," thereby limiting

its exposure only to Plaintiffs' counsel and precluding its being made available to the plaintiffs themselves:

> 1.  Final Summary Term Sheets entered into between House of Blues and the owner of the Packard and Metal Supply buildings, possible substitute venues for the Trocadero Theatre;
>
> 2.  House of Blues' internal strategic business plan, related analyses and internal financial projections for its joint Packard Building/Trocadero Theatre strategic business plan;
>
> 3.  House of Blues' comprehensive Philadelphia Board Approval Package, which includes among other things, the information listed in category 2 above and which was presented to the House of Blues Board of Directors in preparation for House of Blues entering the Philadelphia market; and
>
> (4) Internal House of Blues e-mail communications regarding the status of negotiations with the owner of the Packard Building and the potential terms governing a proposed long-term lease of the same.

Defendants assert that the total number of documents which it seeks to designate as "confidential information-outside counsel only" is less than ten.  Plaintiffs apparently do not oppose the Defendants' proposed designation of the first four categories of information as "confidential information" such that that information cannot be disclosed to third parties outside of this litigation.  Rather, it is to the proposed designation of the second four categories of information as "confidential information-outside counsel only" that Plaintiffs object.

## Discussion

The matter of protective orders generally is addressed in

Rule 26(c) of the Federal Rules of Civil Procedure.

Specifically, that Rule states, in relevant part:

> Upon motion by a party or by the person from whom discovery is sought,... and for good cause shown, the court in which the action is pending ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (1) that the disclosure or discovery not be had;
>
> (2) that the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time or place;
>
> (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;
>
> (4) that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters;
>
> (5) that discovery be conducted with no one present except persons designated by the court;
>
> (6) that a deposition, after being sealed, be opened only by order of the court;
>
> (7) that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way; and
>
> (8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court.
>
>                    ...

Thus, a party seeking a protective order over discovery materials must demonstrate that "good cause" exists for the protection of that material. Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995). "Good cause is established on a

showing that disclosure will work a clearly defined and serious
injury to the party seeking closure.  The injury must be shown
with specificity."  Pansy v. Borough of Stroudsburg, 23 F.3d
772, 786 (3d Cir. 1994), quoting Publicker Industries, Inc. v.
Cohen, 733 F.2d 1059, 1071 (3d Cir. 1984) "Broad allegations of
harm, unsubstantiated by specific examples or articulated
reasoning," do not support a good cause showing.  Id., quoting
Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir.
1986), cert. denied, 484 U.S. 976, 108 S.Ct. 487, 98 L.Ed.2d 485
(1987).  The burden of justifying the confidentiality of each and
every document sought to be covered by a protective order remains
on the party seeking the order.  Pansy, 23 F.3d at 786-787,
citing Cipollone, 785 F.2d at 1122.  See Also, Merit Industries
v. Feuer, 201 F.R.D. 382, 384-385 (E.D.Pa. 2001).

In determining whether there is good cause, the courts must
balance the interests of the public and the parties.  Shingara v.
Skiles, 420 F.3d 301, 306 (3d Cir. 2005).  Specifically,

> "the court must balance the requesting party's need for
> information against the injury that might result if
> uncontrolled disclosure is compelled.  When the risk of harm
> to the owner of a trade secret or confidential information
> outweighs the need for discovery, disclosure (through
> discovery) cannot be compelled, but this is an infrequent
> result."

Pansy, 23 F.3d at 787, citing Arthur R. Miller, Confidentiality,
Protective Orders, and Public Access to the Courts, 105
Harv.L.Rev. 427, 433-435 (1991).  As noted in Pansy, Glenmede

and Shingara, all supra, the Third Circuit has articulated some seven factors which, though by no means exhaustive, should be considered in deciding whether to grant a protective order. These are:

    1) whether disclosure will violate any privacy interests;

    2) whether the information is being sought for a legitimate purpose or for an improper purpose;

    3) whether disclosure of the information will cause a party embarrassment;

    4) whether confidentiality is being sought over information important to public health and safety;

    5) whether the sharing of information among litigants will promote fairness and efficiency;

    6) whether a party benefitting from the order of confidentiality is a public entity or official; and

    7) whether the case involves issues important to the public.

See Also, In re Plastics Additives Antitrust Litigation, Civ. A. No. 03-2038, 2005 U.S. Dist. LEXIS 23771 at *10 (E.D.Pa. Aug. 24, 2005).

    In this case, the defendants contend that the materials which they seek to designate as "confidential information-outside counsel only" are highly sensitive, confidential and proprietary and that allowing the plaintiffs themselves to view it could be particularly harmful given that the impetus behind this litigation was the termination of negotiations for the sale of the Trocadero Theatre to HOB and that the parties are now direct competitors.  We agree that the information which HOB seeks to

7

protect appears by its very nature to be proprietary and
confidential and that its disclosure to a direct competitor could
prove very damaging were that competitor to use the information
in furtherance of its own business.  Indeed, the information at
issue concerns the defendants' evaluations, negotiations, and
development of a strategic business plan for entering the
Philadelphia area marketplace, securing an appropriate and/or
alternative venue(s) to the Trocadero at the Packard and Metal
Supply Buildings and its financial projections relative to such a
venture.  It is difficult to conceive how this information might
be in the public interest or how any potential public interest
could be outweighed by the defendants' private interest in
maintaining its confidentiality.

As the defendants have sufficiently established that the
information at issue is confidential, the burden shifts to the
plaintiffs to demonstrate that it is relevant and necessary to
their case so as to outweigh the harm disclosure could
potentially pose to the defendants.  See, e.g., 8 Wright, Miller
& Marcus, *Federal Practice and Procedure Civil 2d* §2043, at 559
(2d ed. 1994).  In opposition to Defendants' motion, the
plaintiffs allege only that their ability to prosecute and/or
defend the claims at issue would be hampered because their
counsel does not have an extensive background in or familiarity
with the entertainment industry, in contrast to Defendants' in-

house counsel.  Plaintiffs thus do not articulate how this information is relevant to this litigation or why they require it to make out their case or defend themselves against the defendants' counter-claims.  Again, the claims in this action arise out of the parties' alleged respective breaches of the Exclusive Booking Agreement between them –-we are hard-pressed to discern how the defendants' market research, business plan and negotiations with another potential landlord is necessary for the plaintiffs to prosecute or defend this action.  We therefore find that the defendants have made a showing sufficient to justify the entry of the protective order sought.

An order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

```
JOON ASSOCIATES, INC., d/b/a  : CIVIL ACTION
TROCADERO THEATRE             :
                              :
        vs.                   : NO. 05-CV-6621
                              :
HOUSE OF BLUES TOURS AND      :
TALENT, INC.                  :
                              :
        vs.                   :
                              :
JOANNA PANG, Individually,    :
JOON ASSOCIATES, INC., d/b/a  :
TROCADERO THEATRE             :
```
```
JOON ASSOCIATES, INC., d/b/a  : CIVIL ACTION
TROCADERO THEATRE             :
                              :
        vs.                   : NO. 06-1632
                              :
HOUSE OF BLUES TOURS AND      :
TALENT, INC., KEVIN MORROW,   :
MICHAEL ETZIONI, GREGORY      :
TROJAN, JOSEPH KACZOROWSKI    :
LIAM THORNTON                 :
```

<u>**ORDER**</u>

_____AND NOW, this    18th    day of September, 2006, upon

consideration of the Motion of House of Blues Tours and Talent,

Inc., Kevin Morrow, Michael Etzioni, Gregory Trojan, Joseph

Kaczorowski and Liam Thornton for Entry of a Protective Order

Regarding Confidentiality and Plaintiffs' Response thereto, it is

hereby ORDERED that the Motion is GRANTED and the parties are

DIRECTED to execute as a Stipulated Protected Order the form of

order proposed by Defendants as an exhibit to the within motion

10

and that Order shall govern the production of and use by the
parties of all discovery materials in this consolidated action.

                    BY THE COURT:



                    s/J. Curtis Joyner
                    J. CURTIS JOYNER,        J.

11